UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JARED MASHBURN and LAURA MASHBURN, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04698-JMS-TAB |
| | ) | |
| ROBERT HECHINGER, *MCSD Deputy in his* | ) | |
| *individual capacity, et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## ORDER

Plaintiffs Jared Mashburn and Laura Mashburn bring this action against several defendants related to a search of the Mashburns' home, which led to the arrest and imprisonment of Mr. Mashburn and an order directing the Mashburns to vacate their home.  Presently pending are the following motions, which are ripe for the Court's decision: (1) a Motion to Dismiss filed by Defendants Indiana State Troopers Clayton Gum, Corey Brown, and Tyler Bentlage (the "ISP Defendants"); Indiana Department of Correction ("IDOC") Parole Agents Jack Ross, Gerald Hayn, and Chawn Davis (the "Parole Agent Defendants"); and Parole Board Members Gwendolyn Horth, Charles Miller, Frederick Medley, Thor Miller, and James Shaffer (the "Parole Board Defendants"), [Filing No. 25]; (2) a Motion for Judgment on the Pleadings filed by Montgomery County Sheriffs' Department ("MCSD") Deputy Robert Hechinger, MCSD Sergeant R. Jenkins, and MCSD Detective Fullenwider (the "MCSD Defendants"); and Montgomery County Health Department Administrator Amber Reed, [Filing No. 49]; and (3) a Motion for Judgment on the

Pleadings filed by the ISP Defendants and the Parole Agent Defendants, [Filing No. 59].[1]

# I.
## BACKGROUND

The following factual allegations are taken from the Complaint, [Filing No. 1], and accepted as true solely for the purpose of this Order:

In 2014, the Parke County Circuit Court sentenced Mr. Mashburn to eight years of incarceration, during which he was permitted to participate in the IDOC WCA Therapeutic Community Substance Abuse Program. [Filing No. 1 at 4.] In January 2017, the Parke County Circuit Court granted Mr. Mashburn's motion requesting a transfer to the West Central Regional Community Corrections program and participation in the Community Transition Program to complete the balance of his sentence. [Filing No. 1 at 4.] On May 16, 2017, the West Central Regional Community Corrections program filed a notice that Mr. Mashburn had successfully completed the community transition program, and Mr. Mashburn was released from custody. [Filing No. 1 at 4.]

On November 27, 2017, MCSD Deputy Hechinger and IDOC Parole Agents Ross and Hayn came to the Mashburns' home in Montgomery County, Indiana, and were later joined by the ISP Defendants, MCSD Detective Fullenwider, and MCSD Sergeant Jenkins. [Filing No. 1 at 4.] None of these officers or agents produced, or claimed to have, a valid search warrant, and the Mashburns did not give consent to any of the officers or agents to search any part of their property. [Filing No. 1 at 5.] Despite the lack of a valid warrant or consent, and without probable cause, the

---

[1] Based on references in the Defendants' filings, the Clerk is **DIRECTED** to make the following corrections to the docket: (1) change Defendant Clayton Gumm to "Clayton Gum"; (2) change Defendant C. Brown to "Corey Brown"; (3) change Defendant T. Bentlage to "Tyler Bentlage"; (4) change Defendant Jerry Hayne to "Gerald Hayn"; and (5) change Defendant Shawn Doe to "Chawn Davis."

officers and agents entered and searched the Mashburns' home, garage, vehicles, outbuildings, and property. [Filing No. 1 at 5.] After the search, Deputy Hechinger arrested Mr. Mashburn and filed a probable cause affidavit stating: "As a condition of being on parole[,] Mr. Mashburn waives his 4th Amendment Rights to be searched at anytime (sic) by parole[, and a] copy of the [parole] agreement is supposed to be emailed to me by Parole Officer Travis Carter." [Filing No. 1 at 5.] However, Mr. Mashburn was not on parole because he had been released from Community Transition after serving the balance of his sentence. [Filing No. 1 at 5.] No parole agreement was ever produced. [Filing No. 1 at 5.] MCSD Deputy Hechinger's probable cause affidavit falsely alleged that Mr. Mashburn had a "Meth Lab" in his garage. [Filing No. 1 at 6.] Deputy Hechinger later admitted, under oath in a deposition, that he staged photographs of the search of Mr. Mashburn's property "for no other reason than for a judge or jury to believe [falsely that Mr. Mashburn] was committing a crime." [Filing No. 1 at 6.]

Within fourteen days, Mr. Mashburn was able to post bond on the methamphetamine charges for which he was arrested, but he continued to be held on the alleged parole violation. [Filing No. 1 at 5.] He continued to be incarcerated and the MCSD refused to release his bond. [Filing No. 1 at 5.] Mr. Mashburn had an initial parole violation hearing with the Indiana Parole Board (the "Parole Board"), comprised of the Parole Board Defendants. [Filing No. 1 at 5.] The Parole Board unlawfully shifted the burden of proof to Mr. Mashburn to prove that he was not on parole. [Filing No. 1 at 5.] Mr. Mashburn's attorney presented evidence from depositions of the officers involved in the search and arrest and evidence of his release from Community Corrections without being placed on parole, but the Parole Board found that Mr. Mashburn had violated his parole. [Filing No. 1 at 5.]

On April 10, 2018, Mr. Mashburn pled guilty to possession of methamphetamine related to the November 27, 2017 search. [Filing No. 50-2.][2] In exchange for his guilty plea, charges of manufacturing methamphetamine and possession of materials with intent to manufacture methamphetamine were dismissed. [Filing No. 53-4 at 2.] Mr. Mashburn was held in custody for ten months for the alleged parole violation. [Filing No. 1 at 5-6.] He filed a Petition for a Writ of Habeas Corpus in the Hendricks Superior Court. [Filing No. 1 at 6.] That court found that Mr. Mashburn's incarceration ended on May 16, 2017 and ordered that he be released immediately from custody without supervision. [Filing No. 1 at 6.] Mr. Mashburn was never convicted of any crime involving the production of methamphetamine or possession of the materials to make methamphetamine as a result of the November 27, 2017 illegal search. [Filing No. 1 at 6.]

Based on Deputy Hechinger's probable cause affidavit and the ISP Defendants' "occurrence report," Ms. Reed claimed that "an operational meth lab was found in [Mr. Mashburn's] garage," and issued a December 4, 2017 Order (the "Health Department Order") requiring all occupants of the Mashburns' house to vacate it immediately. [Filing No. 53-6.] Ms. Reed immediately seized the Mashburns' home without doing any testing, without having a hearing, and without any other form of due process. [Filing No. 1 at 6.] As a result, Mrs. Mashburn was ejected from the home. [Filing No. 1 at 6.] Mr. Mashburn filed a Petition Seeking Review of the Health Department Order,

---

[2] Certain facts surrounding Mr. Mashburn's guilty plea to possession of methamphetamine and the subsequent state court proceedings are not contained in the Complaint, but the Court takes judicial notice of the state court pleadings attached as exhibits to the Motion for Judgment on the Pleadings filed by the MCSD Defendants and Ms. Reed. [Filing No. 50-2 to Filing No. 50-9.] *See Matthews v. Capital One Bank*, 2008 WL 4724277, at *2 (S.D. Ind. 2008) ("[A] district court can 'take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment.'… Federal courts can take judicial notice of the decisions of both federal and non-federal courts").

but his Petition was dismissed when he and his counsel failed to appear for a scheduled bench trial.

[Filing No. 53-6.]  As a result, the Health Department Order became final.  [Filing No. 53-6.]

As of the date of the filing of the Complaint, Ms. Reed has continued to refuse to allow the Mashburns to enter their home, despite Mr. Mashburn having never been convicted of producing methamphetamine or possessing the chemicals to produce methamphetamine and despite a state court order releasing Mr. Mashburn from custody.  [Filing No. 1 at 6.]  The Mashburns are not able to get electric power turned on at the property so that they can live there in a camper, because Ms. Reed will not permit the power to be turned on by the utility provider.  [Filing No. 1 at 6.]

On November 26, 2019, the Mashburns filed their Complaint against the ISP Defendants, the Parole Agent Defendants, the Parole Board Defendants, the MCSD Defendants, and Ms. Reed. [Filing No. 1.]  The Mashburns assert the following claims:

- Count I: The Mashburns' 42 U.S.C. § 1983 claim against the MCSD Defendants, the ISP Defendants, and the Parole Agent Defendants for illegal search and seizure related to their entry into and search of the Mashburns' property without consent, a search warrant, or probable cause;

- Count II: Mr. Mashburn's § 1983 claim against the MCSD Defendants, the ISP Defendants, and the Parole Agent Defendants for illegal search and seizure related to arresting Mr. Mashburn without an arrest warrant or probable cause;

- Count III: Mr. Mashburn's § 1983 claim against Deputy Hechinger for depriving Mr. Mashburn of his right to be free from unreasonable searches and seizures and to due process of law due to his intentionally false statements in the probable cause affidavit and by producing intentionally misleading photographs;

- Count IV: The Mashburns' § 1983 claim against Ms. Reed for unreasonable seizure and unlawful taking of the Mashburns' property based on seizing their house as a "meth lab" without testing, ejecting the Mashburns from their home, refusing to allow the Mashburns to bring electricity onto the property for their camper, and continuing to deny the Mashburns access to the property;

- Count V: The Mashburns' § 1983 claim against the ISP Defendants, the MCSD Defendants, the Parole Agent Defendants, and Ms. Reed for conspiracy;

- Count VI: Mr. Mashburn's § 1983 claim against the Parole Board Defendants for deprivation of liberty without due process related to their shifting the burden of proof to Mr. Mashburn to prove that he was not on parole in order to show that he should be released;

- Count VII: Mr. Mashburn's § 1983 *Monell* claim against the Parole Board Defendants; and

- Count VIII: The Mashburns' § 1983 *Monell* claim against the MCSD Defendants and Ms. Reed.

[Filing No. 1 at 7-12.]

## II.
### MOTION TO DISMISS FILED BY ISP DEFENDANTS, PAROLE AGENT DEFENDANTS, AND PAROLE BOARD DEFENDANTS [FILING NO. 25]

### A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility

determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### B. Discussion

The ISP Defendants, the Parole Agent Defendants, and the Parole Board Defendants seek dismissal of all claims against them in their official capacities, and dismissal of all claims against the Parole Board Defendants in their individual capacities. [Filing No. 26 at 1.] The Court considers each issue in turn.

#### 1. *Official Capacity Claims*

The ISP Defendants, the Parole Agent Defendants, and the Parole Board Defendants first argue that any claims against them in their official capacities must be dismissed because they are not "persons" for purposes of 42 U.S.C. § 1983 liability, as they are all officers of the State. [Filing No. 26 at 3-4.]

The Mashburns respond that they are not asserting official capacity claims against the Parole Agent Defendants or the ISP Defendants. [Filing No. 37 at 1.] They also concede that "their official capacity claims against the [Parole Board Defendants] must be dismissed." [Filing No. 37 at 1-2.]

Based on the Mashburns' concessions, the Court **GRANTS** the Motion to Dismiss as to any official capacity claims against the ISP Defendants, the Parole Agent Defendants, and the Parole Board Defendants. [Filing No. 25.]

#### 2. *Individual Capacity Claims Against the Parole Board Defendants*

The ISP Defendants, the Parole Agent Defendants, and the Parole Board Defendants also argue in their motion that claims against the Parole Board Defendants in their individual capacity cannot succeed because the Parole Board Defendants are entitled to quasi-judicial immunity.

[Filing No. 26 at 4.]  They assert that "[a]ll of the Parole Board [Defendants] are entitled to absolute immunity because all actions allegedly taken by [them] were inexorably connected to the Parole Board's execution of its parole revocation procedures."  [Filing No. 26 at 4.]  They contend that the Parole Board Defendants' decision regarding who had the burden of proof to show Mr. Mashburn's parole status "is analogous to a judicial action," for which the Parole Board Defendants are entitled to absolute immunity.  [Filing No. 26 at 5.]

In response, the Mashburns concede that their individual capacity claims against the Parole Board Defendants fail because the Parole Board Defendants are entitled to immunity.  [Filing No. 44 at 2.]  They assert, however, that they have "legitimate, personal/individual capacity claims" against Parole Agents Ross and Hayn.  [Filing No. 44 at 2.]

Initially, the Court notes that it does not read the Motion to Dismiss as arguing that personal capacity claims against Parole Agents Ross and Hayn should be dismissed.  Indeed, Parole Agents Ross and Hayn raise arguments in support of dismissal of those claims in a separate Motion for Judgment on the Pleadings discussed below.  [Filing No. 59.]  As to the individual capacity claims against the Parole Board Defendants, because the Mashburns concede that those claims fail on immunity grounds, the Court **GRANTS** the Motion to Dismiss as to those claims.

### C.  Conclusion

The Court **GRANTS** the Motion to Dismiss filed by the ISP Defendants, the Parole Board Defendants, and the Parole Agent Defendants as determined above.  [Filing No. 25.]  All official capacity claims against the ISP Defendants and the Parole Agent Defendants are **DISMISSED**, and all official and individual capacity claims against the Parole Board Defendants are **DISMISSED**.

### III.
### MOTION FOR JUDGMENT ON THE PLEADINGS FILED BY THE MCSD DEFENDANTS AND MS. REED [FILING NO. 49]

**A.  Standard of Review**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the filing of the complaint and answer. *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). In ruling on a motion for judgment on the pleadings, the Court may only consider the complaint, answer, and any documents attached thereto as exhibits. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998).

A motion for judgment on the pleadings under Rule 12(c) "is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). To survive the motion, "a complaint must 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams*, 742 F.3d at 728 (quoting *Iqbal*, 556 U.S. at 678). Factual allegations in the complaint are accepted as true, but allegations that are legal conclusions are insufficient to survive the motion. *Adams*, 742 F.3d at 728. In other words, to survive dismissal, a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

**B.  Discussion**

The MCSD Defendants and Ms. Reed raise a host of arguments in support of their Motion for Judgment on the Pleadings, which the Court re-orders and discusses below.

1.   *Claims Against Ms. Reed*

a.   Due Process Claim (Count IV)

In Count IV of their Complaint, the Mashburns assert that Ms. Reed's "actions, in seizing [their] house as a 'meth lab' without testing, ejecting [them] from the home, refusing to allow [them] to bring electricity onto the property for [their] camper, and continuing to deny [them] access to the property were unreasonable." [Filing No. 1 at 9.]  They contend that Ms. Reed's "actions constitute an unreasonable seizure of the Mashburns' property, and an unlawful taking of that property which deprive the Mashburns of their rights to be free from unreasonable searches, and to due process of law, as guaranteed by the Fourth, Fifth[,] and Fourteenth Amendments to the United States Constitution." [Filing No. 1 at 9.]

Ms. Reed argues that the Mashburns' due process claim fails because state statutes provided a process for reviewing the Health Department Order, and the availability of judicial review of that order satisfies due process.  [Filing No. 50 at 12.]  She also asserts that the fact that the process was provided after the deprivation of the property, rather than prior to the deprivation, does not change the result because "[t]he necessity of quick action by the State . . ., when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." [Filing No. 50 at 13 (internal quotation and citation omitted).]  Ms. Reed maintains that the need for quick action was present here because of the possibility that methamphetamine was being illegally manufactured on the property, and that she acted according to the statutory provisions that authorized her to issue orders related to dwellings that are believed to be unfit for human habitation.  [Filing No. 50 at 13-14.]  She contends that a post-deprivation judicial review "far exceeds constitutional due process requirements, especially considering the minimal process due

for interference with real property rights." [Filing No. 50 at 14.] Ms. Reed further notes that Mr. Mashburn availed himself of such procedural protections when he brought an action against the Health Department seeking review of the Health Department Order, and that the Montgomery County Circuit Court dismissed that action with prejudice when Mr. Mashburn and his attorney (who is Mr. Mashburn's counsel in this action as well) failed to appear for the bench trial. [Filing No. 50 at 14 (citing Filing No. 53-6 at 1).]

In response, the Mashburns argue that their claims against Ms. Reed in Count IV are not foreclosed by the state court hearing because "the scope of the Mashburns' claim in Count IV is much broader than the [Health Department] Order." [Filing No. 52 at 11.] They argue that while the Health Department Order requires "all persons living in the dwelling [to] vacate the dwelling immediately," their claim "addresses not only the December 4, 2017…order to evacuate, but [also] the *de facto* seizure of the Mashburns' home, which continues as of today; and [Ms.] Reed's refusal to allow the Mashburns to restore electrical service to the property (as opposed to the house itself)." [Filing No. 52 at 11 (citation and emphasis omitted).]

In reply, Ms. Reed challenges the Mashburns' characterization of her actions as a "seizure" of their home, clarifying that the home was not alleged to have been subjected to a Fourth Amendment seizure, but was instead "subjected to an administrative order to vacate the home and have it tested pursuant to state statutes governing homes that are believed to be unfit for human occupancy." [Filing No. 54 at 10.] Ms. Reed argues that this is a Fifth Amendment due process claim, not a Fourth Amendment seizure claim, and she notes that the Mashburns did not respond to her argument that Indiana law provided sufficient due process and, therefore, any such argument should be considered waived. [Filing No. 54 at 10.]

To state a claim for the deprivation of procedural due process rights, the Mashburns must allege that: "(1) [they] had a constitutionally protected property interest, (2) [they] suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred without due process of law." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943-44 (7th Cir. 2010). Indiana Code § 16-41-20-9 provides that "[a] person aggrieved by an order of a local board of health or county health officer issued under this chapter may, not more than ten (10) days after the making of the order, file with the circuit or superior court a petition seeking a review of the order." The reviewing court's decision is final. *Id.* Where, as here, state law remedies exist, the Mashburns must "either avail [themselves] of the remedies guaranteed by state law or demonstrate that the available remedies are inadequate." *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996).

Here, it is undisputed that the Mashburns did not avail themselves of the process provided by Indiana statute. Specifically:

- On December 4, 2017, Ms. Reed sent Mr. Mashburn the Health Department Order, which stated that the residence had been deemed "Unfit for Human Habitation," cited the applicable Indiana statutes, ordered all persons living at the residence to vacate it immediately, and provided information regarding how to seek a review of the order. [Filing No. 50-7 at 3.]

- On December 13, 2017, Mr. Mashburn, with the assistance of counsel Rafael Ramirez, filed a Petition Seeking Review of the Health Department Order and Setting Matter for Hearing. [Filing No. 50-7.]

- On November 25, 2019, the Montgomery County Court issued a Judgment and Order Dismissing Petitioner's Petition Seeking Review of Order. In the Order, the Montgomery County Court stated that "[a]ll parties were notified in open Court on May 2, 2019 of the bench trial hearing scheduled for November 7, 2019 and were otherwise notified of the hearing. Petitioner, Jared Mashburn and his counsel, failed to appear…. Montgomery County Health Department, by counsel, moved the Court for dismissal of the Petition Seeking Review of Order for Petitioner's failure to attend and prosecute and for entry of judgment in its favor that its December 4, 2017 Order is affirmed, final, and conclusive." [Filing No. 50-8 at 1.] The Montgomery County Court dismissed Mr. Mashburn's Petition Seeking Review of Order with prejudice and entered judgment against Mr. Mashburn. [Filing No. 50-8 at 1.] At that time, Mr.

Mashburn was represented by the same counsel representing him in this action. [*See* Filing No. 50-8 at 2 (reflecting distribution of November 25, 2019 Judgment and Order to the same counsel representing Mr. Mashburn in this matter).]

Although the Mashburns started the process provided under Indiana statute, they did not finish it because they failed to participate in the scheduled bench trial.  The Mashburns cannot decline to participate in the process provided by Indiana statute and then claim that they did not have due process.[3]  Additionally, the Mashburns do not argue that the process provided by Indiana statute is somehow inadequate.

Likely recognizing the issue with their due process claim against Ms. Reed, the Mashburns shift the focus of their claim and argue that they are really alleging a claim for Fourth Amendment unlawful seizure.  [*See* Filing No. 52 at 11 ("The Mashburns' claim however addresses not only the December 4, 2017, order to evacuate, but the *de facto* seizure of the Mashburns' home, which continues as of today; and Reed's refusal to allow the Mashburns to restore electrical service to the property (as opposed to the house itself)") (emphasis omitted).]

Constitutional claims "must be addressed under the most appropriate provision," and a complaint "gains nothing by attracting additional constitutional labels." *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (citation omitted).  While the Mashburns reference the Fourth Amendment in Count IV of their Complaint, the focus of their claim is on the Health Department Order which resulted in their eviction from the property and inability to restore power, and the process they received related to that order.  The Court finds that the Mashburns' claim against Ms. Reed is properly analyzed as a due process claim and that, as discussed above, that claim fails as a matter

---

[3] This applies equally to the Mashburns' claim that they cannot restore power to their property – a consequence which flows directly from the Health Department Order.

of law because the Mashburns did not avail themselves of the review process provided by Indiana law.

Because the Mashburns did not avail themselves of the process provided by Indiana law, and because they do not allege that the process was somehow inadequate and led to the continued seizure of their property, the Court **GRANTS** the MCSD Defendants' and Ms. Reed's Motion for Judgment on the Pleadings as it relates to Count IV of the Complaint.

### b.   Conspiracy Claim Against Ms. Reed (Count V)

The Mashburns allege in Count V that Ms. Reed conspired with the MCSD Defendants, the ISP Defendants, and the Parole Agent Defendants by forcibly removing them from their home, seizing their home, and denying them the use of their home without due process.  [Filing No. 1 at 10.]

The MCSD Defendants and Ms. Reed argue that Count V should be dismissed "to the extent it is based upon Count IV." [Filing No. 50 at 14.]  The Mashburns do not address this argument in their response.  [*See* Filing No. 52.]

Ms. Reed's involvement in the allegations that support Count V is limited to her role in obtaining and executing the Health Department Order evicting the Mashburns from their home and preventing their re-entry.  As discussed above, the Court has found that the Mashburns' allegations do not support a claim for deprivation of due process rights against Ms. Reed. Accordingly, because there is not a valid claim for deprivation of constitutional rights, the Mashburns' claim for conspiracy to deprive them of constitutional rights as against Ms. Reed fails as well.  *See Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) (conspiracy claim against defendant foreclosed where there was no underlying constitutional violation by that

defendant).  The Court **GRANTS** the MCSD Defendants' and Ms. Reed's Motion for Judgment on the Pleadings as it relates to Count V against Ms. Reed.

### c.  *Monell* Claim Against Ms. Reed (Count VIII)

The MCSD Defendants and Ms. Reed argue that the Mashburns' *Monell* claim related to the Health Department Order fails because Ms. Reed "is not imbued with the power to create law or establish the County's policy concerning dwellings that are considered unfit for human habitation," but rather "was merely implementing pre-existing rules adopted by the State of Indiana, using procedures established in state statute." [Filing No. 50 at 28.]

The Mashburns argue in response that Ms. Reed was the Administrator of the Montgomery County Health Department, and issued the order "in the name of the Montgomery County Health Department," so "it is reasonable to infer from these facts that [she] was the final decisionmaking authority with respect to the [Health Department Order]." [Filing No. 52 at 22.]

In their reply, the MCSD Defendants and Ms. Reed argue that discretionary decisionmaking authority is not sufficient to create *Monell* liability, and that Ms. Reed was merely carrying out state-created policy.  [Filing No. 54 at 19-20.]

In order to sustain a *Monell* claim, "a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020) (citing *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404-07 (1997)).  A plaintiff can demonstrate that an official policy existed by providing "proof of an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking

authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999). "The critical question under *Monell*…is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents.*" Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017).

The Mashburns do not argue in their response that there was an express policy causing their loss or a widespread practice that caused the loss. Instead, they focus on the fact that Ms. Reed is the Administrator of the Montgomery County Health Department and issued the Health Department Order, arguing that it is "reasonable to infer" from those facts that she was the "final decisionmaking authority." But the key is not whether Ms. Reed had "final decisionmaking authority" – it is whether she had "final policymaking authority." To have final policymaking authority, she must have had the "[r]esponsibility for making law or setting policy," or the "authority to adopt rules for the conduct of government." *Rasche v. Village of Beecher*, 336 F.3d 588, 599 (7th Cir. 1992) (quotation and citation omitted). Importantly, "[t]he mere authority to implement pre-existing rules is not the authority to set policy." *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004).

The Mashburns' boilerplate allegation that Ms. Reed was the policymaking authority for the Health Department is insufficient. Instead, their allegations amount to nothing more than Ms. Reed, pursuant to Indiana law, issuing the Health Department Order that they claim deprived them of their constitutional rights. But her status as the final decisionmaker related to issuing the Health Department Order does not equate to her being a policymaker. Because the Mashburns' Complaint is devoid of any specific allegations that Ms. Reed was the final policymaker related to the issuance of the Health Department Order, the Court **GRANTS** the MCSD Defendants' and Ms. Reed's Motion for Judgment on the Pleadings as it relates to *Monell* liability for Ms. Reed's actions.

16

2.  Monell *Claim Against the MCSD Defendants (Count VIII)*

The MCSD Defendants argue that any *Monell* claim against Montgomery County based on their actions fails because they are agents of the Sheriff's Department and not of Montgomery County.  [Filing No. 50 at 23.]  They argue further that even if Montgomery County were the proper entity for a *Monell* claim, the Mashburns have not set forth any specific allegations of an official policy, widespread practice, or final policymaker action which caused their alleged constitutional deprivation.  [Filing No. 50 at 24.]

In response, the Mashburns argue that they "do not dispute they cannot premise a successful *Monell* claim on the [MCSD Defendants'] actions alone," but that they are alleging that the MCSD Defendants conspired with Ms. Reed and "if [Ms.] Reeds' actions and the [MCSD Defendants'] actions were both unlawful, the jury could reasonably believe the [MCSD Defendants] and [Ms.] Reed conspired to harm the Mashburns."  [Filing No. 52 at 21.]

The MCSD Defendants reiterate their arguments in their reply.  [Filing No. 54 at 18-20.]

Even assuming that the MCSD Defendants can be considered agents of Montgomery County, the Mashburns' allegations do not support a *Monell* claim related to their actions.  The Mashburns' boilerplate allegations that the MCSD Defendants' actions "were taken pursuant to a custom, policy or practice of the [MCSD]" are not sufficient.  [Filing No. 1 at 12.]  They do not allege any facts, or even argue, that the MCSD Defendants were the final policymakers or acted pursuant to a policy, but instead rely on Ms. Reed's alleged role as a final decisionmaker.  [Filing No. 52 at 21.]  But the Court has already found that the Mashburns' *Monell* claim based on Ms. Reed's actions fails as a matter of law.  Accordingly, it rejects the Mashburns' attempt to bootstrap onto Ms. Reed's actions in order to impose *Monell* liability for the MCSD Defendants' actions.

The Court **GRANTS** the MCSD Defendants' and Ms. Reed's Motion for Judgment on the Pleadings as it relates to *Monell* liability for the MCSD Defendants' actions (Count VIII).

### 3. Claim Against Sergeant Jenkins and Detective Fullenwider (Count II)

In Count II, Mr. Mashburn alleges that the ISP Defendants, the Parole Agent Defendants, and the MCSD Defendants "deprived [him] of his federally protected rights to be free from unreasonable searches and seizures, and to due process of law, . . . by arresting [him] without an arrest warrant or probable cause." [Filing No. 1 at 8.] Sergeant Jenkins and Detective Fullenwider argue that this claim, as applied to them, fails because Mr. Mashburn does not plead that they were personally involved in his arrest, but instead that "[Deputy] Hechinger placed Jared under arrest. . . ." [Filing No. 50 at 12 (quoting Filing No. 1 at 5).]

In response, the Mashburns argue that they have sufficiently alleged that Sergeant Jenkins and Detective Fullenwider were personally involved in the unlawful search of their home, pointing to allegations that Sergeant Jenkins and Detective Fullenwider were present at the home, did not have a search warrant, and did not receive consent for the search. [Filing No. 52 at 10.]

In reply, Sergeant Jenkins and Detective Fullenwider assert that their argument is that the Mashburns failed to allege the men were personally involved in the arrest—not the search. [Filing No. 54 at 9.] They note that the Mashburns' response brief is unresponsive on this issue. [Filing No. 54 at 9.]

"Individual liability under § 1983…requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (quotation and citation omitted); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged

constitutional deprivation…. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary") (emphasis omitted). Mr. Mashburn alleges in Count II that he was deprived of his rights to be free from unreasonable searches and seizures when he was arrested without an arrest warrant or probable cause. [Filing No. 1 at 7-8.] Earlier in the Complaint, Mr. Mashburn alleges that Deputy Hechinger placed him under arrest and that Deputy Hechinger "filed a probable cause affidavit…." [Filing No. 1 at 5.] Mr. Mashburn does not allege that Sergeant Jenkins or Detective Fullenwider were involved in his arrest or in drafting or filing the probable cause affidavit.

Because Mr. Mashburn does not allege that Sergeant Jenkins or Detective Fullenwider were personally involved in Mr. Mashburn's arrest or in drafting or filing the probable cause affidavit – which is the focus of Count II – the Court **GRANTS** the MCSD Defendants' and Ms. Reed's Motion for Judgment on the Pleadings as it relates to Count II against Sergeant Jenkins and Detective Fullenwider.

    4.  *Remaining Claims Related to Search of Property and Arrest and Detention of Mr. Mashburn*

Remaining for the Court's consideration are the MCSD Defendants' arguments related to Count I (illegal search and seizure related to the MCSD Defendants' entry into and search of the Mashburns' property); Count II (illegal search and seizure related to Deputy Hechinger arresting Mr. Mashburn without an arrest warrant or probable cause); Count III (unreasonable search and seizure and deprivation of due process rights related to Deputy Hechinger making false statements in the probable cause affidavit and producing intentionally misleading photographs); and Count V (conspiracy to deprive of constitutional rights against the MCSD Defendants). The Court first considers the MCSD Defendants' qualified immunity argument, which applies to all of the remaining claims against them, then goes on to consider arguments specific to certain claims.

a.  Qualified Immunity

The MCSD Defendants argue that they are entitled to qualified immunity because they did not violate the Mashburns' constitutional rights and because, even if they did, it was not clearly established that their actions would be unconstitutional.  [Filing No. 50 at 18-19.]  They assert that they did not violate the Mashburns' constitutional rights because they had been advised that Mr. Mashburn was on parole, and that it was not clearly established that they should have independently confirmed that he was on parole.  [Filing No. 50 at 20.]  They also contend that probable cause existed to believe that Mr. Mashburn was in possession of methamphetamine, which justified his arrest and detention.  [Filing No. 50 at 21.]

In response, the Mashburns argue that the MCSD Defendants violated their clearly established constitutional rights by conducting a warrantless search of their home.  [Filing No. 52 at 14.]  They further argue that the right to be free from unreasonable searches was clearly established at the time of the search.  [Filing No. 52 at 15-19.]

In their reply, the MCSD Defendants argue that the Mashburns "fail to satisfy their burden to demonstrate that these Defendants violated their clearly-established constitutional rights." [Filing No. 54 at 15.]

Granting a motion for judgment on the pleadings on qualified immunity grounds "is a 'delicate matter'" because, under the federal rules, a plaintiff is not required "to anticipate a qualified immunity defense and allege every fact needed to defeat it in the complaint." *Rusinowski v. Vill. of Hillside*, 835 F. Supp. 2d 641, 650 (N.D. Ill. 2011) (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)).  Dismissal of a claim based on qualified immunity is only appropriate where "the plaintiffs' well-pleaded allegations, taken as true, do not 'state a claim of violation of clearly established law.'" *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (quoting

*Behrens v. Pelletier*, 516 U.S. 299, 306 (1996)).  Put simply, if the plaintiff alleges "(1)… facts that, if true, would constitute a violation of a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the alleged violation, such that a reasonable public official would have known his conduct was unlawful," then dismissal on qualified immunity grounds is not warranted.  *Hanson*, 967 F.3d at 592.

Here, the Mashburns allege that their property was searched without a valid search warrant, that they did not consent to the search, that Deputy Hechinger placed Mr. Mashburn under arrest, and that Deputy Hechinger filed a probable cause affidavit which falsely stated that Mr. Mashburn was on parole.  [Filing No. 1 at 4-5.]  The MCSD Defendants have moved for a judgment on the pleadings, not for summary judgment.  At the pleadings stage, where the Court must accept the Mashburns' allegations as true, the Court finds that the Mashburns have adequately alleged that their constitutional rights were violated, and that their rights (*i.e.*, to be free from unreasonable searches and seizures) were clearly established at the time of the search and seizure.  Accordingly, the Court **DENIES** the MCSD Defendants' Motion for Judgment on the Pleadings to the extent it is based on the defense of qualified immunity.

### b.  Search of Property Claims

The MCSD Defendants argue that they are entitled to judgment on the pleadings on Count I (and Count V, to the extent it is based on Count I) because their search of the Mashburns' property was reasonable under the Fourth Amendment.  [Filing No. 50 at 5-6.]  They argue that, because Mr. Mashburn was on parole at the time, his home was subject to an unannounced search, without a warrant and without probable cause or reasonable suspicion.  [Filing No. 50 at 6.]

The Mashburns respond that Mr. Mashburn was not on parole at the time of the search, so he did not waive his Fourth Amendment right to be free from unreasonable searches and seizures.

[Filing No. 52 at 3-4.]  They also assert that Mrs. Mashburn has a separate and distinct Fourth Amendment right to be free from a warrantless search, and that she did not consent to the search. [Filing No. 52 at 4-5.]

The MCSD Defendants reiterate many of their arguments in their reply.  [Filing No. 54 at 2-7.]  They also argue that Mrs. Mashburn does not have a separate Fourth Amendment claim related to the search, stating that "[b]ecause [Mr. Mashburn] was subjected to parole supervision…the parole and law enforcement defendants could lawfully search [the] home despite the allegation that [Mrs. Mashburn] objected to the search," but acknowledging that they did not locate "any Seventh Circuit precedent directly on-point on whether an objecting co-habitant has a Section 1983 claim if a parolee's abode is searched despite their objection…."  [Filing No. 54 at 5-6.]

As with the MCSD Defendants' arguments related to qualified immunity, the Court again notes that it is required to take the Mashburns' allegations as true at this stage of the litigation.  The parties vehemently dispute whether Mr. Mashburn was on parole at the time of the search and his arrest – a key fact that is highly relevant to the unlawful search claim.  This fact is also relevant to whether or not Mrs. Mashburn has a valid claim related to the search.  Mr. Mashburn alleges that he was not on parole, and the Court must accept that allegation when considering the MCSD Defendants' Motion for Judgment on the Pleadings.  In doing so, the Court finds that the Mashburns have adequately alleged that the search of their property was not reasonable and the MCSD Defendants' Motion for Judgment on the Pleadings on Count I and Count V, to the extent it is based on Count I, is **DENIED**.

c.   <u>Arrest and Detention Claims</u>

In support of their motion, the MCSD Defendants argue that Mr. Mashburn's arrest and detention-related claims (Counts II and III) and the Mashburns' conspiracy claim (Count V), to the extent it is based on Counts II and III, fail for multiple reasons, including: (1) that they are barred by *Heck v. Humphrey*; (2) that the sole proximate cause of Mr. Mashburn's loss of liberty was his guilty plea for possession of methamphetamine and the resulting sentence; (3) that his guilty plea for possession of methamphetamine constitutes a waiver of his arrest and detention claims; and (4) that probable cause existed for Mr. Mashburn's arrest and detention.  [Filing No. 50 at 7-11.]  The Court considers each argument in turn.

### i.      **Heck v. Humphrey**

The MCSD Defendants argue that *Heck v. Humphrey* bars Mr. Mashburn's arrest and detention claims because Mr. Mashburn pled guilty to possession of methamphetamine, was sentenced, and his conviction and sentence have not been vacated, overturned, or invalidated in a federal habeas proceeding.  [Filing No. 50 at 8-9.]  They assert that if Mr. Mashburn were to prevail on his false arrest and unlawful detention claims, "that would have the effect of declaring unlawful detention that was later authorized by virtue of his guilty plea for possession of methamphetamine, and sentencing of time served pursuant to [Mr. Mashburn's] plea agreement with the State." [Filing No. 50 at 8-9.]

In response, the Mashburns argue that "[t]he Defendants misunderstand the gravamen of the Mashburns' Complaint, which does not challenge [Mr. Mashburn's] possession of methamphetamine conviction or imprisonment.  Rather, the Mashburns challenge the ten months of imprisonment (from November 27, 2017, through September 13, 2018) [Mr. Mashburn]

underwent because of the false allegation that he had waived his Fourth Amendment rights because of the alleged parole violation."  [Filing No. 52 at 6 (emphasis omitted).]

In their reply, the MCSD Defendants argue that the Mashburns do not dispute that *Heck v. Humphrey* "applies to [Mr. Mashburn's] time-served sentence."  [Filing No. 54 at 7.]  They contend that "[b]y asserting that the loss of his liberty from November 27, 2017 through September 13, 2018 was unlawful, [Mr. Mashburn] necessarily asserts that the loss of his liberty from November 27, 2017 through April 10, 2018 was unlawful," and that Mr. Mashburn's "loss of liberty from November 27, 2017 through April 10, 2018 remains lawful regardless of what happened with the parole violation."  [Filing No. 54 at 7.]

"In *Heck v. Humphrey*, [512 U.S. 477 (1994), the Supreme Court] held that where success in a…[42 U.S.C.] § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004).  It is undisputed that Mr. Mashburn was arrested for possession of methamphetamine in addition to other charges, and that he was imprisoned from November 27, 2017 to April 10, 2018 on the possession of methamphetamine charge and pursuant to his plea agreement.  Any challenge to his arrest and detention during that time period is barred by *Heck v. Humphrey*, as it would constitute a collateral attack on his conviction and sentence for possession of methamphetamine.[4]  Mr. Mashburn must "obtain[ ] a favorable termination of a challenge to his conviction," *Savory v. Cannon*, 947 F.3d 409, 413 (7th Cir. 2020), and he undisputedly has

---

[4] The Seventh Circuit has held that in some instances a Fourth Amendment claim is not barred by *Heck v. Humphrey* where the plaintiff pled guilty, because "Fourth Amendment claims as a group do not necessarily imply the invalidity of a criminal conviction, and so such claims are not suspended under the *Heck* bar to suit." *Dominguez. v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008); *see also Mordi v. Zeigler*, 870 F.3d 703, 707 (7th Cir. 2017); *Evans v. Poskon*, 603 F.3d 362, 363-

not.  [*See* Filing No. 50-4 (state court order dismissing Mr. Mashburn's petition for post-conviction relief on his conviction for possession of methamphetamine); Filing No. 50-5 (state court order denying Mr. Mashburn's petition for leave to file a second petition for post-conviction relief).]

The Court finds that any § 1983 claims related to Mr. Mashburn's November 27, 2017 arrest or his detention from November 27, 2017 to April 10, 2018 are barred by *Heck v. Humphrey*, and **GRANTS** the MCSD Defendants' Motion for Judgment on the Pleadings on those claims (Count II, and Count III as it relates to Mr. Mashburn's detention from November 27, 2017 to April 10, 2018).  The Court **DENIES** the MCSD Defendants' Motion for Judgment on the Pleadings on Count III as it relates to the time period from April 11, 2018 (the day after his time-served sentence for possession of methamphetamine ended) to his release on September 13, 2018.  Mr. Mashburn's detention during that time period was not related to the possession of methamphetamine sentence, and any § 1983 claims related to that time period would not be a collateral attack on his conviction and sentence for possession of methamphetamine.

### ii.      Proximate Cause and Waiver Arguments

The MCSD Defendants argue that even assuming *Heck v. Humphrey* does not bar Mr. Mashburn's arrest and detention claims, those claims still fail because the sole proximate cause of Mr. Mashburn's detention was his guilty plea for possession of methamphetamine and the resulting

---

64 (7th Cir. 2010).   The Seventh Circuit has also recognized, however, an exception to the exception, where "a plaintiff's [factual] allegations necessarily imply the invalidity of a conviction (even one based on a guilty plea)."  *Mordi*, 870 F.3d at 708 (emphasis omitted); *see also Okoro v. Callaghan*, 324 F.3d 488, 489-90 (7th Cir. 2003); *Tolliver v. City of Chicago*, 820 F.3d 237, 244 (7th Cir. 2016).   Here, the Court finds that Mr. Mashburn's false arrest claim necessarily implies that his conviction – albeit based on his guilty plea – is invalid.  Additionally, the Court finds that his unlawful detention claim related to the time period for which he was incarcerated on the possession of methamphetamine charge necessarily implies that his conviction and sentence were invalid.  *See Mordi*, 870 F.3d at 708 ("the judge must carve off any *Heck*-barred contentions and proceed with what remains").

sentence, and his guilty plea constituted a waiver of any claims related to that period of detention. [Filing No. 50 at 9-11.]

The Mashburns essentially concede that Mr. Mashburn's guilty plea was the proximate cause of his detention from November 27, 2017 to April 10, 2018, but argue that he still has a viable claim for his detention after that and that his guilty plea does not constitute a waiver with respect to the legality of the search and seizure of his home or his confinement after April 10, 2018. [Filing No. 52 at 6-8.]

The MCSD Defendants argue in their reply that the Mashburns do not respond to their arguments regarding waiver or proximate cause. [Filing No. 54 at 8.]

The Court has already found that Mr. Mashburn's § 1983 claim related to his November 27, 2017 arrest and his claim for detention from November 27, 2017 to April 10, 2018 are barred by *Heck v. Humphrey*. Independent of a *Heck* bar, the Court also finds that the proximate cause of Mr. Mashburn's detention from November 27, 2017 to April 10, 2018 was his guilty plea. But the portion of his unlawful detention claim that remains – for the period from April 11, 2018 to September 13, 2018 – has nothing to do with his guilty plea for possession of methamphetamine. Accordingly, the Court **DENIES** the MCSD Defendants' Motion for Judgment on the Pleadings for that remaining claim based on proximate cause and waiver.

### iii.    Probable Cause Argument

Finally, the MCSD Defendants argue that Mr. Mashburn's arrest and detention claims fail because probable cause existed for his arrest and detention. [Filing No. 50 at 11.] They assert that Mr. Mashburn "cannot deny the existence of probable cause for his arrest because the state court found probable cause to believe that he had committed the offense of possession of

26

methamphetamine and [Mr. Mashburn] pled guilty to possession of methamphetamine." [Filing No. 50 at 11.]

In response, the Mashburns concede that probable cause existed for Mr. Mashburn's arrest and detention, [Filing No. 52 at 8], but argue that there was no probable cause for Mr. Mashburn's continued imprisonment following his sentencing in connection with his guilty plea. [Filing No. 52 at 8-9.]

In their reply, the MCSD Defendants reiterate their arguments. [Filing No. 54 at 8.]

The Court has already dismissed Mr. Mashburn's false arrest claim and his unlawful detention claim relating to the time period from November 27, 2017 to April 10, 2018. The Court also finds that there is an independent ground for dismissing those claims: because Mr. Mashburn concedes that there was probable cause for his arrest for possession of methamphetamine, his false arrest claim and any unlawful detention claim he has related to the period for which he was incarcerated on that charge fail as a matter of law. *Bailey v. City of Chicago*, 779 F.3d 689, 694 (7th Cir. 2015) ("Probable cause [to arrest] is an absolute defense to any claim under § 1983 for wrongful arrest or false imprisonment"). For the period after Mr. Mashburn had served his sentence for possession of methamphetamine, but for which he was still incarcerated, it is not at all clear from the allegations in the Complaint whether there was probable cause for his detention. Again, this period of detention relates to whether or not Mr. Mashburn was on parole when he was arrested. Taking Mr. Mashburn's allegations as true, which the Court must do at this stage of the litigation, the Court again finds that Mr. Mashburn's unlawful detention claim related to the period after his guilty plea until he was released (April 11, 2018 to September 13, 2018) should proceed.

### C. Conclusion

As set forth above, the Court **GRANTS IN PART** the MCSD Defendants' and Ms. Reed's Motion for Judgment on the Pleadings, [Filing No. 49], to the extent that it **DISMISSES** the following claims: (1) Count II – false arrest claim as against the MCSD Defendants; (2) Count III – unlawful detention claim against Deputy Hechinger as it relates to the period from November 27, 2017 to April 10, 2018; (3) Count IV; (4) Count V – conspiracy claim as against Ms. Reed and as against the MCSD Defendants to the extent it is based on Count II or the dismissed portion of Count III; and (5) Count VIII.  The MCSD Defendants' Motion for Judgment on the Pleadings, [Filing No. 49], is **DENIED IN PART** to the extent that it is denied in all other respects.

### IV.
### MOTION FOR JUDGMENT ON THE PLEADINGS FILED BY THE PAROLE AGENT DEFENDANTS AND THE ISP DEFENDANTS [FILING NO. 59]

### A. Standard of Review

The Parole Agent Defendants and the ISP Defendants bring their motion under Fed. R. Civ. P. 12(c), and the Court applies the same standard it applied to the Motion for Judgment on the Pleadings filed by the MCSD Defendants and Ms. Reed, and discussed above.

### B. Discussion

In support of their motion, the Parole Agent Defendants and the ISP Defendants argue that they are entitled to qualified immunity on the Mashburns' Fourth Amendment claims because "[i]t was not clearly established at the time that [they] entered and found evidence of Mr. Mashburn's possession of methamphetamines that their search was unconstitutional." [Filing No. 60 at 5-6.] They argue that they relied on Mr. Mashburn's status as a parolee in searching the Mashburns' house without a warrant and that "existing law would have led a reasonable officer to believe that the November 27, 2017 search comported with the Fourth Amendment." [Filing No. 60 at 6-7.]

The Parole Agent Defendants and the ISP Defendants also argue that the Mashburns' conspiracy claim fails because they fail to allege an underlying tort or that they "came to an agreement [with Ms. Reed] or acted in any other way that violated [the Mashburns'] rights." [Filing No. 60 at 9-10.] Finally, the Parole Agent Defendants and the ISP Defendants argue that Mrs. Mashburn does not have standing to sue them because she only alleges injury in connection with the seizure of her home – which was a result of the Health Department Order and not due to any actions by the Parole Agent Defendants or the IPS Defendants. [Filing No. 60 at 10-11.]

The Mashburns did not file a response.

As the Seventh Circuit has repeatedly instructed, a failure to timely raise an argument constitutes forfeiture of that argument. *See Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) ("[F]orfeiture is the mere failure to raise a timely argument, due to either inadvertence, neglect, or oversight") (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)); *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011) ("As to the defendants' motion to dismiss the complaint, [plaintiff] waived his right to contest the dismissal by failing to oppose the motions"); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999) ("[B]y failing to respond responsively to the motion to dismiss…[plaintiff] forfeited her right to continue litigating her claim"); *Stransky v. Cummins Engine Co., Inc.,* 51 F.3d 1329, 1335 (7th Cir. 1995) (when a party fails to oppose a motion, "[t]he federal courts will not invent legal arguments for litigants").

Consistent with this principle, and with Local Rule 7-1(c)(5) which provides that the Court may "summarily rule on a motion if an opposing party does not file a response within the deadline," the Court **GRANTS** the Motion for Judgment on the Pleadings filed by the Parole Agent Defendants and the ISP Defendants. [Filing No. 59.] Consequently, the Court **DISMISSES** Count I, Count II, and Count V as against the Parole Agent Defendants and the ISP Defendants.

**V.**

**CONCLUSION**

As set forth above, the Court:

- **GRANTS** the Motion to Dismiss filed by the ISP Defendants, the Parole Agent Defendants, and the Parole Board Defendants, [25], and **DISMISSES WITH PREJUDICE** all official capacity claims against the ISP Defendants and the Parole Agent Defendants, and all official and individual capacity claims against the Parole Board Defendants;

- **GRANTS IN PART** and **DENIES IN PART** the Motion for Judgment on the Pleadings filed by the MCSD Defendants and Ms. Reed, [49] and **DISMISSES WITH PREJUDICE** Count II against the MCSD Defendants, Count III as it relates to Mr. Mashburn's detention from November 27, 2017 to April 10, 2018, Count IV, Count V as against Ms. Reed and as against the MCSD Defendants to the extent it is based on Count II or the dismissed portion of Count III, and Count VIII.

- **GRANTS** the Motion for Judgment on the Pleadings filed by the Parole Agent Defendants and the ISP Defendants, [59], and **DISMISSES WITH PREJUDICE**[5] all claims against those parties.[6]

No partial final judgment shall issue.  The Clerk is **DIRECTED** to **TERMINATE** the

following parties from this matter: Clayton Gum, Corey Brown, Tyler Bentlage, Jack Ross, Gerald

---

[5] The Court is dismissing the Mashburns' claims with prejudice.  Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend his complaint once as a matter of course in response to a motion to dismiss. *Brown v. Bowman*, 2011 WL 1296274, at *16 (N.D. Ind. 2011).  The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion.  A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim."  Instead of amending their Complaint in response to the pending motions, the Mashburns chose for the Court to rule on the motions – three separate motions that challenged the validity of all of the Mashburns' claims on multiple grounds, and on which the Court expended significant judicial resources.  The Court is not required to give the Mashburns another chance to plead their claims because they have already had an opportunity to cure deficiencies and chose to have the Court adjudicate their claims instead.  *See Emery v. American Gen. Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998).

[6] The grant of the Motion to Dismiss filed by the ISP Defendants, the Parole Agent Defendants, and the Parole Board Defendants, and the grant of the unopposed Motion for Judgment on the Pleadings filed by the Parole Agent Defendants and the ISP Defendants results in the dismissal of Counts I, II, V, VI, and VII as against those Defendants.

Hayn, Chawn Davis, Amber Reed, Gwendolyn Horth, Charles Miller, Frederick Medley, Thor Miller, and James Shaffer.

The following claims shall proceed:

- Count I: The Mashburns' § 1983 claim against the MCSD Defendants for illegal search and seizure related to their entry into and search of the Mashburns' property without consent, a search warrant, or probable cause;

- Count III: Mr. Mashburn's § 1983 claim against Deputy Hechinger for depriving Mr. Mashburn of his right to be free from unreasonable searches and seizures and to due process of law due to his intentionally false statements in the probable cause affidavit and by producing intentionally misleading photographs related to his detention from April 11, 2018 to September 13, 2018; and

- Count V: The Mashburns' § 1983 conspiracy claim against the MCSD Defendants, to the extent that claim is based on Count I and the surviving portions of Count III.

The Court requests that the Magistrate Judge confer with the parties regarding the possibility of resolving the Mashburns' remaining claims short of trial.

Date: 10/16/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

31